IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN W.,[1]

No. 2:24-cv-00293-JR

                Plaintiff,

OPINION & ORDER

      v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

RUSSO, Magistrate Judge:

        Plaintiff John W. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying his application for Title II

Disability Insurance Benefits[2] under the Social Security Act ("the Act"). All parties have

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

[2] Plaintiff also applied for Supplemental Security Income under Title XVI. Tr. 250-56. Plaintiff only challenges the ALJ's conclusion that he was not disabled between April 4, 2020, and September 11, 2022, and refusal to award Title II DIB during that period. *See* Pl. Reply at 1. The Court therefore does not consider plaintiff's Title XVI application in this appeal.

1 – OPINION & ORDER

consented to allow a Magistrate Judge to enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 3. For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

## PROCEDURAL BACKGROUND

Born in July 1969, plaintiff alleges disability beginning April 4, 2020. Tr. 259-60. Plaintiff alleged disability due a variety of conditions, including problems with his back, knees, joints, high blood pressure, sleep apnea, learning disability and depression/anxiety. Tr. 281. His application was denied initially and upon reconsideration. Tr. 94-97, 182-89. On February 16, 2023, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") Stephen Marchioro. Tr. 40-75. On April 5, 2023, the ALJ issued a decision finding plaintiff not disabled between April 4, 2020, and September 12, 2022, the relevant period for this appeal. Tr. 12-39. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

Initially, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2022. Tr. 18. At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since April 4, 2020, the alleged onset date. Tr. 18. At step two, the ALJ determined the following impairments were medically determinable and severe: degenerative disc disease lumbar and cervical spine; degenerative joint disease right knee status post total knee arthroscopy; degenerative joint disease left knee; and rheumatoid arthritis. Tr. 18. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20.

Because plaintiff did not establish presumptive disability during the relevant period at step three, the ALJ continued to evaluate how his impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except:

> he could operate foot controls with the right lower extremity only occasionally; he could occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; he could never climb ladders, ropes, or scaffolds; he could only occasionally be exposure to vibration (such as vibrating tools or vibrating surfaces); and he could only occasionally be exposed to unprotected heights and unguarded moving mechanical parts (for example table saws, bands saws, or exposed mechanical gears).

Tr. 23.

At step four, the ALJ determined the claimant was incapable of performing any past relevant work. Tr. 30. At step five, the ALJ found plaintiff capable of performing other jobs that existed in significant numbers in the national economy during the relevant period, such as cashier II, merchandise marker, and domestic laundry worker. Tr. 31. The ALJ therefore found plaintiff not disabled from April 4, 2020, the alleged onset date, through September 12, 2022, the date on which he became disabled. Tr. 32.

## DISCUSSION

Plaintiff argues the ALJ committed four harmful errors.[3] He contends the ALJ erred by (1) discounting his testimony without a clear and convincing reason for doing so, (2) improperly evaluating the medical opinions of FNP Mary Schimmelpfennig, (3) rejecting plaintiff's mother's and son's competent lay testimony, and (4) relying on vocational expert testimony that

---

[3] Plaintiff also argues that "the onset date the ALJ found is not supported by substantial evidence." Pl. Br. at 12. He points to medical evidence and testimony he believes supports his disability claim starting at the beginning of the relevant period (April 2020). *Id.* Because this argument is just another species of plaintiff's contentions about symptom testimony and the weight of the medical evidence in the record, the Court does not consider it separately.

was the product of incomplete hypotheticals. For the reasons that follow, the Court finds the ALJ did not err, and affirms.

## I.    Symptom Testimony

Plaintiff contends the ALJ erred by discrediting his testimony about the extent of his physical limitations. Pl.'s Br., ECF No. 14 at 15-19. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified he stopped working because of pain in his back, knees, and hands. He explained that sitting for long periods causes numbness in his legs. Tr. 57. Plaintiff estimated that during the relevant period he could sit for 15 minutes and stand for 10 minutes at a time. After that, he would need to lie down. He estimated he spent 75 percent of the day either in a recliner or lying down. Tr. 58. Plaintiff said he spent about six hours per week doing his activities of daily living, such as grocery shopping. When shopping, plaintiff had to lean on the cart for support. He said he could do these types of tasks for only about 10 to 15 minutes before needing a break. Plaintiff could lift a gallon of milk but would have to use two hands. Tr. 59.

Plaintiff said he dropped things a lot because of numbness in his hands. He drives, but generally not for more than 8 to 10 minutes, either to the store or to take his son to work. Tr. 60. Plaintiff sleeps poorly due to pain. He estimated he had one good day each week. He described difficulty concentrating due to pain. Tr. 61. Plaintiff has been told he needs surgery on his back, but he has not had the procedure because his insurance coverage is too limited. Tr. 62. Plaintiff described an incident in September 2022 when he was trying to replace a screen and fell from a ladder, injuring his leg. He explained that he did not regularly attempt to do household projects or outdoor chores and if he did, he would last for only a few minutes. Tr. 63. Plaintiff said he could throw a ball for his parents' dog, but not for more than five to ten minutes. Tr. 64.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 24. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and

limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 24. Specifically, the ALJ found plaintiff's symptom allegations were inconsistent with objective medical evidence, and that plaintiff's daily activities conflicted with his symptom allegations. Tr. 24.

The ALJ reasonably discounted plaintiff's allegations of limitations stemming from his back, knee, and hand pain as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). At the hearing, plaintiff testified about back, knee and hand pain that caused numbness and affected his strength and mobility. *See, e.g.*, Tr. 57-64. Specifically, plaintiff alleged he could stand for only 10 minutes, sit for 15, and would need to lie down and rest most of the day. Tr. 57-58. In contrast to plaintiff's allegations that severe pain caused him to lie down 75-85% of his waking hours, no medical records reflected such acute distress or pain. Tr. 25 (citing, e.g., Tr. 58 422, 434, 440). And, although plaintiff stated he was in so much pain he could not focus, his physicians did not document any trouble concentrating or any distractions due to pain during visits. Tr. 25 (citing Tr. 61, 901, 1004, 1008). Such absence of corroborating medical evidence cannot be the only factor an ALJ considers when discounting testimony but is a relevant consideration. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) The ALJ further highlighted that plaintiff's medical records showed that "[o]verall, he had normal strength, range of motion, and sensation, with no focal neurological deficits. He did not use an assistive device (other than while recovering from knee surgery), and he walked with a normal, [non-antalgic] gait." Tr. 25-26 (citing, e.g., Tr. 422, 425-26, 451, 1034-35). These records all conflicted with or showed a lack of support for plaintiff's allegations of more significant

limitations and amount to substantial evidence supporting the ALJ's decision to discount plaintiff's testimony about the severity of his physical symptoms.

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with his own statements about daily activities. Tr. 25-26. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or his credibility).

The ALJ reasonably found several of plaintiff's reported daily activities in conflict with his allegations about physical symptoms. To discount a plaintiff's testimony, an ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn,* 495 F.3d at 639. Although plaintiff alleged he needed to lie down most of his waking hours, the ALJ noted he still managed to find time to help his mother with projects, perform simple chores like laundry and light cleaning, do light yardwork, drive his son to work,

manage his personal care, help care for pets and chickens, prepare simple meals, and shop in stores for food. Tr. 24, 25 (citing Tr. 62-63, 298-99, 301-02, 303, 309-10, 311-12). He went to Bingo regularly and golfed. Tr. 29 (citing Tr. 371, 414, 844, 854). As the ALJ explained, "[t]hese activities are also contradictory to the claimant's reported level of functional compromise and demonstrate a capacity to perform the activities set forth in the residual functional capacity." Tr. 26. Because the ALJ reasonably cited several activities that conflict with plaintiff's allegations about the limitations his physical symptoms cause, this was another clear and convincing reason for the ALJ to rely upon to discount his testimony.

Plaintiff urges the Court to adopt a different interpretation of the record but does not undermine the substantial evidence supporting the ALJ's decision. Specifically, plaintiff argues the activities the ALJ cited fail to establish he could "sustain activity for a full workday and work week." Pl Reply at 5. But the ALJ did not cite these activities as independent proof plaintiff could work nine-to-five, only to point out inconsistencies between plaintiff's symptom testimony and his reported activities elsewhere in the record. Plaintiff also argues the ALJ overlooked several medical records where he "often presented in significant pain," despite acknowledging that his providers noted his "reported pain was out of proportion to what the objective medical evidence showed." Pl. Br. at 16. Plaintiff's arguments about these individual medical appointments are an effort to have this Court re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that

backdrop, even though plaintiff clearly interprets the evidence differently, he has not (and cannot) establish error by simply advancing a different interpretation of the medical evidence.

## II.    Medical Opinion Evidence

Plaintiff also argues the ALJ did not properly consider FNP Mary Schimmelpfennig's medical opinion. Pl. Br, ECF No. 14 at 13-15. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

FNP Mary Schimmelpfennig completed a statement on January 20, 2023, in which she opined that plaintiff had constant severe pain, muscle spasms, and numbness in his extremities, as well as depression and anxiety. She opined plaintiff could sit, stand, or walk for 15 minutes to

one hour each and must change positions constantly due to his pain. Tr. 1066-67. FNP

Schimmelpfenning opined plaintiff could not lift or carry more than 5 pounds and could use his

hands for reaching, handling, and fingering activity for no more than 3 hours during an 8-hour

workday. Tr. 1067-68, 1082-83. She opined plaintiff was likely to need multiple breaks during

an average workday and should elevate his legs while seated for at least 50 percent of a workday.

Tr. 1068. She opined plaintiff was likely to be off task for 25 percent or more of a typical

workday. Tr. 1069. He would likely be absent 5 days or more each month. Tr. 1070. Weeks later,

on February 2, 2023, FNP Schimmelpfennig amended her initial opinion regarding plaintiff's

ability to work. Tr. 1081-85, 1147-51. In this amended opinion, FNP Schimmelpfennig

determined plaintiff's impairments were present at the indicated severity dating back to February

8, 2021. Tr. 1085. The ALJ found FNP Schimmelpfennig's opinions "unpersuasive," concluding

the limitations the FNP described were "excessive" and internally inconsistent. Tr. 29.

  The ALJ adequately discussed the strength of the evidence underlying FNP

Schimmelpfennig's opinions in the record when finding it unpersuasive. Tr. 25. The

supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on

how "relevant the objective medical evidence and supporting explanations presented by a

medical source are to support his or his medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ

discounted FNP Schimmelpfennig's opinion first because it was not supported by her own

treatment records. Tr. 29. For instance, although FNP Schimmelpfennig stated that emotional

factors contributed to plaintiff's symptom severity and functional limitations, she uniformly

found his mood, affect, and behavior to be normal. Tr. 29 (comparing Tr. 1081 with Tr. 686,

697, 802, 815, 917, 949). The ALJ also noted that, although FNP Schimmelpfennig concluded

plaintiff had reaching, handling, and fingering limitations, she uniformly noted in her treating

notes that he enjoyed a normal range of motion and had no focal deficits. Tr. 29 (comparing Tr. 1082-83 with Tr. 686, 697, 802, 815, 917, 948-49). The ALJ also pointed out that FNP Schimmelpfennig altered her opinion in several material ways only weeks apart, without any evidentiary basis other than "further review" of the record. Tr. 1085. The ALJ reasonably found these several normal findings and internal inconsistency undermined FNP Schimmelpfennig's assessment of extreme limitations. In doing so, the ALJ sufficiently considered the supportability of FNP Schimmelpfennig's medical opinion when concluding it was poorly supported by explanation and objective medical evidence.

The ALJ also reasonably considered the inconsistency of FNP Schimmelpfennig's limitations with the overall medical record. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ reasonably found several aspects of FNP Schimmelpfennig's opinion inconsistent with the record, and therefore not fully persuasive. Tr. 29. For example, although FNP Schimmelpfennig found that plaintiff could not stand or walk more than an hour at a time or for more than two hours total in an 8-hour workday, the record showed that his gait was normal and non-antalgic without use of an assistive device. Tr. 29. The ALJ also contrasted FNP Schimmelpfennig's opinion that plaintiff could only lift 0-5 pounds for one hour in an 8-hour workday, with records showing that his strength was full (5/5), and his muscle tone was normal. Tr. 29. Furthermore, while FNP Schimmelpfennig stated that plaintiff would need to elevate his legs to heart level 50% of the day, Tr. 1083, another treating provider, Anthony Kahr, M.D., opined that plaintiff did not need to elevate his legs. Tr. 381. In sum, the ALJ adequately considered these objective findings, and reasonably concluded they were inconsistent with several of the limitations in FNP Schimmelpfennig's opinion.

### III.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

Plaintiff's mother and son both completed questionnaires describing his limitations. His mother noted plaintiff has pain in his hands and wrists, knees, and feet, and has difficulty concentrating due to his pain. He is often fatigued from lack of sleep. Tr. 299. Plaintiff wakes up at night from his pain. He does not wear regular shoes and wears sandals only due to his pain. Tr. 300. She noted plaintiff is able to do laundry and light cleaning sometimes, but not always

because he has good and bad days with his pain. Tr. 301. Plaintiff takes longer than normal to do chores and has to rest every 15 to 20 minutes. Tr. 302. Plaintiff is not able to do most of his hobbies anymore. Tr. 303. The witness checked lifting, standing, walking, sitting, kneeling, squatting, reaching, using hands, bending, memory, concentration, and completing tasks as abilities affected by plaintiff's conditions. Tr. 304. She noted plaintiff has difficulty focusing or remembering things due to lack of proper sleep and his pain. He leaves tasks unfinished due to pain and fatigue, but after several breaks to rest he will go back and try to finish them. He is forgetful and needs to be given instructions more than once. Tr. 305. Plaintiff is irritable when under stress. Tr. 306.

Plaintiff's son noted plaintiff's pain prevents him from doing strenuous activity. He has back spasms that limit his ability to move and sometimes requires help with personal care. Tr. 366. He noted plaintiff spends most of the day lying down or doing activities in short bursts. Plaintiff sleeps poorly due to pain and is constantly tired. Tr. 367. Plaintiff needs help putting on his socks and shoes and has sometimes needed help reaching to wash himself in the shower. Plaintiff avoids showering if his pain flares. He sometimes needs reminders to take his medications. He cannot stand for longer periods to cook meals. Tr. 368. Plaintiff is able to do chores like laundry and dishes in short increments of about five minutes at a time. Tr. 369. The witness noted that plaintiff is not able to play golf anymore. Tr. 370. Plaintiff does not socialize as often as he used to. Tr. 371. The witness checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentration, and using hands as abilities affected by plaintiff's conditions. Plaintiff needs reminders to follow instructions. Tr. 372. The witness noted plaintiff has had a shorter temper and lack of patience.

Changes in routine cause anxiety. Tr. 373. Plaintiff's medications cause sleepiness, dizziness, and lightheadedness. Tr. 374.

The ALJ provided a specific, germane reason for discounting plaintiff's son's and mother's testimony. The ALJ found the lay witness statements did "not suggest limitations at the level the claimant purports." Tr. 29. For instance, the ALJ noted that plaintiff's mother reported that he shopped, drove, went for rides in the woods, performed light household chores and yard work, played bingo, and enjoyed sports and hunting. Tr. 29 (citing Tr. 299-303). Similarly, plaintiff's son reported that plaintiff took small walks, attended his appointments, took care of the pets, prepared simple meals, did light chores, and regularly attended Bingo. Tr. 29 (citing Tr. 367-71). The ALJ also noted that the statement from plaintiff's son was inconsistent with the objective evidence and plaintiff's own reports. Tr. 29. The ALJ highlighted that although plaintiff's son noted that plaintiff needed reminders to dress and bathe and was unable to golf, plaintiff himself testified he needed no reminders to attend to his personal needs and grooming and told his physicians that he went golfing. Tr. 29-30 (comparing Tr. 367-68, 370 with Tr. 311, 414, 844, 854). As the ALJ reasonably concluded, "The pain levels and other symptoms, such as spasms or needing to take breaks, for example, as described by the [third] parties are inconsistent with the claimant's presentation during examinations as well as the objective findings." Tr. 30. Furthermore, the lay witness testimony describes plaintiff's abilities in January 2023, not between April 4, 2020, and September 12, 2022, the relevant period for this appeal. Ultimately, the ALJ gave sufficient reasons to discount the lay witness testimony.

## IV.    Step Five

Plaintiff further argues the ALJ erred by failing to include relevant physical limitations in the RFC and in resulting hypotheticals posed to the vocational expert. Pl. Br. at 20-21. The RFC

is the most a person can do, despite the person's physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, available at 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

In formulating plaintiff's RFC, the ALJ reasonably relied on persuasive medical opinions and the overall record to determine the most plaintiff could do, despite his limitations. Plaintiff argues the ALJ erred by failing to include limitations the ALJ discredited elsewhere, like his alleged difficulty sitting or standing for extended periods of time. Pl. Br. at 21. As discussed above, however, the ALJ reasonably rejected plaintiff's version of these limitations, and supported the decision to do so with substantial evidence. This step five argument merely repeats plaintiff's prior arguments about symptom testimony and the medical record and therefore fails for the reasons previously articulated. *See Stubbs-Danielson*, 539 F.3d at 1175–76 (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); *Hairston v. Saul*, 827 Fed. App'x 772, 773 (9th Cir. 2020) (rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above."). Because plaintiff's step five argument adds nothing new, the Court finds the ALJ did not err at step five.

## CONCLUSION

For the reasons given above, the Commissioner's decision is affirmed, and this case is dismissed.

IT IS SO ORDERED.

DATED this 20th day of December, 2024

 /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge